UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| John Edward Melendez, <br><br>                Plaintiff, <br><br>v. <br><br>Sirius XM Radio Inc., a Delaware corporation, <br><br>                Defendant. | Case No. _____ <br><br>**COMPLAINT** <br><br>**JURY TRIAL DEMANDED** |

Plaintiff, John Edward Melendez ("Plaintiff" or "Mr. Melendez") professionally known as "Stuttering John," by his undersigned attorneys Zumpano Patricios & Popok, PLLC, as and for his Complaint against Defendant, Sirius XM Radio Inc. ("Defendant" or "Sirius XM"), alleges as follows:

**INTRODUCTION**

Sirius XM, the self-proclaimed leading U.S. audio entertainment company, continues to exploit the celebrity and fame of Plaintiff, a nationally-acclaimed, instantly-recognized podcast host and comic professionally known as "Stuttering John," without consent or compensation. Plaintiff has spent considerable time and energy cultivating his career, managing his celebrity and creating considerable commercial value in his identity and voice. But, Sirius XM, in violation of California law preserving a celebrity's right to protect how his identity, likeness, name, image and voice are used for commercial gain, has exploited Plaintiff's considerable efforts, and aired thousands of radio clips featuring "Stuttering John's" voice and his exploits from the recorded archives of its crown jewel radio program, *The Howard Stern Show* (the "HSS"). The HSS archival recordings prominently featuring Plaintiff (the "HSS Archives") are aired on two of Sirius XM's most popular channels that are dedicated to the HSS – Channel 100 (also known as "Howard 100-

The Howard Stern Show-XL") ("Channel 100"), and Channel 101 (also known as "Howard 101-The "World of Howard Stern-XL") ("Channel 101") [1].

Far from being an "incidental" contributor as Sirius XM now conveniently claims, Mr. Melendez was a lead performer on the HSS from 1988, when he began as an unpaid college intern, until 2004 just before the HSS' highly-publicized $500 million move from terrestrial syndicated radio to a satellite-subscription service owned by Defendant. Mr. Melendez, along with the other writers on the show, were responsible for some of the show's most famous and classic skits. Particularly, Mr. Melendez as his alter ego "Stuttering John" would in "shock jock" fashion, attempt to interview celebrities and politicians at press conferences, red carpet events, and "on the street," ask impertinent and shocking questions, and/or feign ignorance of the identity of the person he was interviewing. The HSS used Mr. Melendez' stutter affliction to disarm the target of the bit, believing that the famous person would play along because of sympathy for Plaintiff's speech impediment. The resulting "Stuttering John" interviews, including those of the Dalai Lama, Gennifer Flowers, Ringo Starr and Billy Crystal, are beloved by fans of the HSS and of Mr. Melendez, a fact that is well-known to Sirius XM who has been exploiting without compensation, the commercial value of its association with "Stuttering John" for years. Sirius XM continues to exploit Mr. Melendez' identity, likeness, name, image and voice in violation of his right of publicity, as it continuously airs old shows featuring Mr. Melendez and his infamous "interviews" and his voice, both on its Channel 100 and Channel 101, including on programs such as

---

[1] As described on www.howardstern.com about the Sirius XM Channels, Sternthology airs on Channel 101 and provides listeners with the "Best of Stern Shows Past" as "[e]very afternoon on Howard 101, the Stern Show archives are opened in order to find some of the most memorable moments from the Howard Stern Show. Sternthology allows listeners to hear the personal requests of their favorite Stern Show bits,…[and] celebrity interviews in addition to the classic moments mentioned on that day's live show . . . ."

"Sternthology" and "Fan Favorites." In sum, Sirius XM exploits Mr. Melendez' own fame and celebrity to drive subscribers and advertising dollars to Sirius XM.

During his fifteen (15) years on the show, Mr. Melendez turned a cult-following into a national fan base of millions. During that time period, Plaintiff appeared in major motion pictures (including Howard Stern's bio-pic), and was given his own radio show with a coveted time slot following the HSS. Mr. Melendez' celebrity has grown since his departure in 2004, when he was recruited to join the then-leading late night television show, NBC's *The Tonight Show With Jay Leno*, as its announcer, staff writer and performer, including serving as its regular "warm up" act for the studio audience. Plaintiff continued as a television sidekick for Mr. Leno in various incarnations of *The Tonight Show*, including on the popular *The Jay Leno Show*. Mr. Melendez' pop culture status is further enhanced by *The Stuttering John Podcast* which focuses on political, legal, sports and entertainment topics for a national audience and loyal fan base. He is also the author of a best-selling memoir entitled *Easy for You to Say* published in 2018.

Sirius XM knows of Mr. Melendez' fame and celebrity status. It continuously airs old clips from the HSS Archives featuring Mr. Melendez without his permission to exploit the commercial value of Mr. Melendez' celebrity, attract new subscribers, generate rich advertising dollars, drive up the ratings of the show, and keep Mr. Melendez' fan base listening to the HSS. Recent events also indicate that Sirius XM has no intention of either refraining from exploiting Mr. Melendez' identity, likeness, name, image and voice for commercial gain, or compensating him for doing so. Instead, in response to Mr. Melendez' lawyers sending a recent cease and desist letter to Sirius XM, its general counsel marginalized Mr. Melendez' contributions to the HSS, and attempted to bully him by threatening to take his <u>current</u> show having nothing to do with the HSS Archives (*The Stuttering John Podcast),* off its Pandora streaming service. Having not secured (or even

asked) Mr. Melendez for his consent to continue to use his identity, likeness, name, image and voice in promoting the HSS, Sirius XM has violated California law and Mr. Melendez' statutory and common law right to publicity, entitling him to compensation in the form of compensatory damages, disgorgement, and punitive damages.

## PARTIES

1. Plaintiff is a resident and citizen of the State of California. Mr. Melendez is a leading U.S. television, radio and podcast personality, comedian, and actor. For more than thirty (30) years, Mr. Melendez has been a well-known celebrity admired by tens of millions of fans.

2. Defendant is a corporation duly existing under the laws of the State of Delaware, with its principal place of business located in New York, New York. Sirius XM is a wholly- owned subsidiary of Sirius XM Holdings Inc. ("Sirius XMHI"), a public company listed on NASDAQ as "SIRI." Sirius XMHI claims to be the "leading audio entertainment company in the U.S., and the premier programmer and platform for subscription and digital advertising-supported audio products."[2] Sirius XMHI also owns Pandora which it claims is the "largest ad-supported audio entertainment streaming service in the U.S."[3] and that together, Sirius XM and Pandora "reach more than 100 million people each month with their audio products."[4]

## JURISDICTION, VENUE AND LAW

3. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

---

[2] *See* http://investor.siriusxm.com/investor-overview/default.aspx?intcmp=GN_FOOTER_NEW_AboutSiriusXM_InvestorRelations (last visited on August 15, 2020).
[3] *Id*.
[4] *Id*.

4.      This Court has personal jurisdiction over Sirius XM because its principal place of business is located in this District, it does business in this District, and a substantial number of the events giving rise to the claims alleged herein originated in New York.

5.      Venue is proper in this District pursuant to: (a) 28 U.S.C. § 1391(b)(1) because Sirius XM's principal place of business is located within this District; and (b) 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the alleged claims occurred in this District given that Sirius XM marketed, promoted, and advertised the HSS using Mr. Melendez' identity, likeness, name, image and voice in this District.

6.      The substantive law of the State of California including its statutory and common law govern the allegations contained in this diversity action because Mr. Melendez' rights (including those of publicity) were and continue to be injured in California where he resides, and where he primarily plies his trade as a celebrity podcast host, comedian and actor.  Further, Sirius XM's services, products, merchandise and the promotion of its services, products and merchandise are nationally distributed across the United States, including in the State of California.

## BACKGROUND

**Mr. Melendez Joins The Howard Stern Show**

7.      Mr. Melendez was completing his undergraduate degree at New York University when in 1988 he was introduced to the opportunity to intern for the nationally-syndicated radio comedy show hosted by Howard Stern ("Mr. Stern"), *The Howard Stern Show*.  The show was broadcasted and nationally syndicated at that time from WXRK, a local New York radio station also known as K Rock 92.3 then owned by Infinity Broadcasting. A condensed televised version of the HSS also featuring Mr. Melendez among others on the show, was televised on E! from 1994 until 2005.

8. Mr. Melendez was hired virtually sight unseen once Mr. Stern learned that Mr. Melendez, who has suffered from a speech disorder since childhood, stutters. In short, Mr. Stern thought it would be funny to have Mr. Melendez on air during his radio broadcast to exploit Plaintiff's speech impediment for comic effect.

9. Beginning as an unpaid administrative intern, Mr. Melendez was initially responsible for answering phones and screening listener calls before they were allowed on the air, along with fulfilling various general tasks requested by the host and other members of the staff. Plaintiff was unpaid for the first two (2) years on the HSS.

10. It was not long before Mr. Melendez became an integral part of the show's popularity. Specifically, Mr. Melendez, branded as "Stuttering John" by Mr. Stern during a now famous "on air" appearance in 1988, became known for "interview" radio segments in which he as a stunt asked politicians and celebrities impertinent, confrontational, and intentionally clueless questions in the street, at red carpet events, and during promotional appearances and press conferences, to shock his targets, and elicit laughs. The "interview" questions used were written by Mr. Melendez as well as other writers on the staff.

11. During these now famous interviews, Mr. Melendez feigned ignorance of basic pop culture and the celebrity target's own fame, which contributed to the humor of the interview. The premise of the "Stuttering John" "gotcha" interviews was that the celebrity target would not want to look bad by turning down Mr. Melendez and his questions because of his stuttering affliction. Adding to the popularity of his segments, the celebrities and politicians would sometimes become very flustered and angry, but in other cases exhibited good humor once they realized they had been "had."

12. Mr. Melendez served as a writer and performer on the HSS for more than fifteen (15) years from 1988 through 2004. At its height when Mr. Melendez was part of its staff and a regular on-air performer, the show enjoyed an incredible 9.5% share of the radio listening market in the U.S.'s largest market -- New York City.

13. Mr. Melendez made an average salary of approximately $35,000 per year while on the HSS.

**Mr. Melendez Becomes Famous**

14. By 1994, the show had fifteen (15) million listeners, and Mr. Melendez started to gain fame beyond the show.

15. Also in 1994, E! signed a deal to televise the radio show, bringing both it and Mr. Melendez increased national exposure. Between his regular appearances on the HSS and the show's rebroadcast on E!, Mr. Melendez gained a steady national fan base in his own.

16. As his fame took off, Mr. Melendez continued to cultivate and expand his celebrity and invest his energies into developing his personal brand which is now instantly recognizable.

17. Mr. Melendez was selected for acting roles in numerous popular movies including *Osmosis Jones*, *Airheads*, *Dude, Where's My Car?* and Mr. Stern's *Private Parts*. He appeared on television shows such as *Celebrity Fear Factor*, *I'm a Celebrity . . . Get Me Out of Here! Wings,* and *Baywatch Nights*. Mr. Melendez also starred in the long-running Off-Broadway show *Tony n' Tina's Wedding,* and received praise from *Rolling Stone Magazine* for his rock & roll album, *Stuttering John,* produced by Atlantic Records. He was most recently the television host of CBS' inaugural broadcast of the *Pro Football Arm Wrestling Championship*.

18. As Mr. Melendez continued to gain fame, he became known for some of the most unforgettable on-air moments which remain classics replayed incessantly as part of the HSS Archives on Defendant's Channel 100 and Channel 101.

19. For example, in 2001, Mr. Melendez got slapped in the face by A.J. Benza, a then-famous gossip columnist, after provoking Mr. Benza about his failed television show. The incident resulted in Benza's lifetime ban from the HSS, but, more importantly for Mr. Melendez, it grew "Stuttering John's" fame and name recognition.

20. In 2002, a series of on-air arguments between Mr. Melendez and Lee Mroszak a.k.a. "Crazy Cabbie" sparked the idea to host a boxing match between them dubbed "The Flunky vs. The Junkie" in Atlantic City. Tickets to the event were sold out in minutes. The boxing match was also broadcast live on the HSS and later aired on E!.

21. Plaintiff's famous interviews that are now considered HSS classics and brought Mr. Melendez added fame include those of the Dalai Lama, Gennifer Flowers, Ringo Starr, Billy Crystal, Mike Tyson and ZZ Top.

22. Mr. Melendez also hosted a series of daily radio shows, including *Out to Lunch,* which were given the coveted time slot following the HSS.

23. In February 2004, riding the wave of his growing popularity, Mr. Melendez left the radio show and became the announcer for, and a performer on, Jay Leno's *The Tonight Show* on NBC, the leading late-night show at the time. While on *The Tonight Show*, Mr. Melendez became part of its writing staff, and regularly appeared in comedy sketches and other correspondent pieces. He also was the "warm up" act for the studio audience each night.

24. In 2009, when Mr. Leno became the host of NBC's *The Jay Leno Show*, Mr. Melendez followed and he became a member of the that show's writing staff. He later rejoined

Mr. Leno when he returned to *The Tonight Show with Jay Leno* in 2010, until that show ended in 2014.

25. In 2016, Mr. Melendez became an executive producer and on-air contributor to *The Stephanie Miller Show*, a radio talk show, and later that year he launched his podcast, *The Stuttering John Podcast*.

26. Mr. Melendez made global news in June 2018 when he prank-called the White House during his podcast pretending to be New Jersey "Senator Bob Menendez," and had a four-minute conversation with President Trump who was aboard Air Force One, primarily about immigration reform and the then U.S. Supreme Court vacancy.

27. The prank call sparked international media attention for Mr. Melendez on *The Hollywood Reporter*, *CNN*, *The New York Times*, *The Washington Post*, *MSNBC*, *Vox Media*, *HuffPo* and other global media outlets after he shared the recorded call on his YouTube channel and Twitter.

28. In October 2018, Mr. Melendez released his memoir *Easy for You to Say* which describes his childhood experiences of being bullied for his stutter, his years on-air with the HSS, and his subsequent career as a writer and on-air announcer for *The Tonight Show*.

29. Mr. Melendez presently boasts an impressive following across social media platforms, YouTube and Facebook, and has up to over 5 million impressions[5] per month on Twitter alone.

---

[5] "Impressions" refers to the number of total times a post on Twitter or "tweet" has been seen which results from activities such as being "liked" or appearing in a search.

**Sirius XM Acquires The Howard Stern Show and
Knowingly Exploits Mr. Melendez' Identity, Likeness, Name, Image and Voice**

30. At the time that Plaintiff was featured on the show, the HSS was approximately 4-5 hours long, and originally broadcasted its nationally-syndicated show five (5) days a week for approximately forty-four (44) weeks a year, year in and year out. As a result, upon information and belief, there exists more than approximately 13,000 hours of episodes of the HSS in which Mr. Melendez's voice, name, and identity are featured.

31. Upon information and belief, every episode of the HSS that Mr. Melendez participated in has been digitally recorded and stored, and comprise the HSS Archives that are used to supplement the live recordings of the show on Sirius XM, to promote the show to Sirius XM's subscriber and listener base, and to generate advertising dollars for Defendant.

32. In 2006, approximately two years after Mr. Melendez left the show, Mr. Stern signed a landmark five (5) year, over $500 million deal with Sirius XM (plus stock options for any increase in the subscriber base) to move from terrestrial radio to Sirius XM's subscription-based satellite radio channels dedicated to Mr. Stern -- "Howard 100" and "Howard 101" -- the latter based entirely on the HSS Archives.

33. As part of the HSS' move to Sirius XM, Defendant claims to have acquired a license to air current episodes of the show, and to air full or partial episodes from the HSS Archives that feature Mr. Melendez as "Stuttering John."

34. Sirius XM continues to air old episodes or parts of episodes from the HSS Archives featuring Mr. Melendez for the 15 years he performed on the show. Upon information and belief, Defendant frequently runs and publicizes "Stuttering John's" participation on the show including his now infamous and highly-popular interviews of celebrities and politicians in order to enhance

its subscription base, sell ads and drive listeners (and subscribers) to Sirius XM and its Howard-centric channels. Demonstrating the value of the HSS and the HSS Archives that include Mr. Melendez to Sirius XM and its own fortunes, the recent public news that Mr. Stern may re-sign with Defendant sent Sirius XM's parent company's stock price soaring.

35. Sirius XM promotes and advertises Mr. Melendez' appearance on the old shows because of Mr. Melendez' own independent celebrity and fame both while he was part of the HSS, and in the years since his departure.

36. Sirius XM has not obtained Mr. Melendez' consent, yet it has deliberately and knowingly engaged in the outrageous and malicious conduct of using his identity, likeness, name, image and voice for its commercial advantage with willful and conscious disregard of Mr. Melendez' own right of publicity.

37. Prior to filing this suit, the undersigned attorneys for Mr. Melendez contacted Sirius XM's general counsel to request that Defendant cease and desist the continued exploitation of Mr. Melendez without his consent.

38. Further demonstrating Defendant's malicious and outrageous conduct toward Plaintiff and in conscious disregard of his rights, not only did Sirius XM not dispute the exploitation claiming a purported license to do so, Sirius XM retaliated against Mr. Melendez by threatening to remove his tremendously successful podcast, *The Stuttering John Podcast*, from distribution through the Pandora music streaming service, which is owned by Defendant's parent company, Sirius XMHI.

**FIRST CLAIM FOR RELIEF**
**VIOLATION OF CALIFORNIA CIVIL CODE § 3344**

39. Mr. Melendez incorporates by reference the foregoing allegations as if the same were fully alleged herein.

11

40. California Civil Code § 3344(a) provides:

> Any person who knowingly uses another's name, voice, signature, photograph, or likeness, in any manner on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of products, merchandise, goods or services, without such person's prior consent . . . shall be liable for any damages sustained by the person or persons injured as a result thereof.  In addition, in any action brought under this section, the person who violated the section shall be liable to the injured party or parties in an amount equal to . . . <u>the actual damages</u> suffered by him or her as a result of the unauthorized use, <u>and any profits from the unauthorized use that are attributable to the use and are not taken into account in computing the actual damages</u> . . . <u>Punitive damages</u> may also be awarded to the injured party or parties. The prevailing party in any action under this section shall also be entitled to <u>attorney's fees and costs</u>.

(Emphasis added).

41. Sirius XM has used and continues to use Mr. Melendez' identity, likeness, name, image and voice knowingly and deliberately, without his prior consent.

42. Each unauthorized use by Sirius XM is unequivocally and directly for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services by Sirius XM.

43. Each unauthorized use by Sirius XM required Mr. Melendez' prior consent.

44. At no time has Mr. Melendez consented to Sirius XM's use of his identity, likeness, name, image and voice for its commercial benefit without compensation.

45. Mr. Melendez has suffered actual damages while residing in California as a result of Sirius XM's deliberate use of his identity, likeness, name, image and voice.

46. Sirius XM has engaged in deliberate, outrageous conduct, carried on with willful and conscious disregard of Mr. Melendez' right of publicity.

**SECOND CLAIM FOR RELIEF**
**MISAPPROPRIATION OF IDENTITY, LIKENESS, NAME, IMAGE AND VOICE UNDER CALIFORNIA COMMON LAW**

47. Mr. Melendez incorporates by reference the foregoing allegations as if the same were fully alleged herein.

48. Sirius XM has used and continues to use Mr. Melendez' name, voice, identity, and likeness for commercial advantage without his consent.

49. Sirius XM's misappropriation has resulted in injury to Mr. Melendez while he resides in the State of California.

50. California common law right of publicity is additive to the statutory right of publicity protection embodied in California Civil Code Section 3344.

**WHEREFORE**, Plaintiff John Edward Melendez respectfully requests the following relief:

A. <u>On his First Claim for Relief</u>, an award of all recoverable compensatory, statutory, punitive and other damages sustained by Mr. Melendez, as well as equitable relief including disgorgement of profits earned as a result of the illegal exploitation of his celebrity, and an order permanently enjoining Sirius XM from continuing the improper acts identified herein;

B. <u>On his Second Claim for Relief</u>, an award of all recoverable compensatory and other damages sustained by Mr. Melendez, as well as equitable relief including disgorgement of profits earned as a result of the illegal exploitation of his celebrity, and an order permanently enjoining Sirius XM from continuing the improper acts identified herein;

C. Attorneys' fees and costs relating to bringing this action pursuant to Cal. Civ. Code Section 3344(a);

D. Pre and post-judgment interest as allowed by law; and

E. Such further relief as this Honorable Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury on all claims and issues so triable pursuant to Federal Rule of Civil Procedure 38(a).

Dated: August 18, 2020

                                    **ZUMPANO PATRICIOS & POPOK, PLLC**

                                    *s/ Michael S. Popok*

Michael S. Popok
Mitchell G. Mandell
Hamutal G. Lieberman
417 Fifth Avenue, Suite 826
New York, NY 10016
Telephone: (212) 381-9999
mpopok@zplaw.com
mmandell@zplaw.com
hlieberman@zplaw.com

***Attorneys for Plaintiff John Edward Melendez***