**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOHN EDWARD MELENDEZ, | ) |
| | ) |
| Plaintiff, | ) Case No.  1:20-cv-06620-PAC |
| | ) |
| vs. | ) |
| | ) |
| SIRIUS XM RADIO INC., a Delaware | ) |
| corporation, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| _____ | ) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT SIRIUS XM RADIO INC.'S**
**MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

FACTUAL BACKGROUND ............................................................................................... 2

ARGUMENT ...................................................................................................................... 4

I.     Plaintiff's State Right of Publicity Claims are Preempted by Federal Copyright Law ........................................................................................................................... 4

        A.     The Two Prong Test for Federal Preemption is Easily Satisfied ........................... 6

        B.     Plaintiff Relies on Cases that Confirm His Claims are Preempted by Federal Copyright Law ......................................................................................... 9

II.    Plaintiff's Years of Silence Constitute Implied Consent to SXM's Alleged Use of the HSS Archives .......................................................................................................... 11

III.   Plaintiff Has Failed to Allege Facts Rising to the Level of a Right of Publicity Claim ................................................................................................................................. 12

        A.     The Complaint Fails to Plead A Cognizable Commercial Purpose or Advantage. ...................................................................................................... 13

        B.     The Complaint Cannot Allege Any Injury Because None Exists ......................... 14

CONCLUSION .................................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................................4

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................................4

*Daly v. Viacom, Inc.*,
   238 F. Supp. 2d 1118 (N.D. Cal. 2002) .......................................................................14

*Downing v. Abercrombie & Fitch*,
   265 F.3d 994 (9th Cir. 2001) .......................................................................................10

*Fleet v. CBS, Inc.*,
   50 Cal. App. 4th 1911 (1996) .....................................................................................5, 8

*Gionfriddo v. Major League Baseball*,
   94 Cal. App. 4th 400 (2001) ...........................................................................13, 14, 15

*Hunt v. All. N. Am. Gov't Income Tr., Inc.*,
   159 F.3d 723 (2d Cir. 1998) ...........................................................................................4

*Jones v. Corbis Corp.*,
   815 F. Supp. 2d 1108 (C.D. Cal. 2011), *aff'd*, 489 F. App'x 155
   (9th Cir. 2012) ...................................................................................................11, 12, 13

*Jules Jordan Video, Inc. v. 144942 Canada Inc.*,
   617 F.3d 1146 (9th Cir. 2010) ...................................................................................5, 6, 8

*Lavery v. Westwood One, Inc.*,
   No. B179672, 2005 WL 2327320 (Cal. Ct. App. Sept. 23, 2005) ...................................8

*Laws v. Sony Music Entm't, Inc.*,
   294 F. Supp. 2d 1160 (C.D. Cal. 2003), *aff'd*, 448 F.3d 1134 (9th Cir. 2006) ...........7, 14

*Maloney v. T3Media, Inc.*,
   853 F.3d 1004 (9th Cir. 2017) .........................................................................4, 8, 9, 10

*Newton v. Thomason*,
   22 F.3d 1455 (9th Cir. 1994) .......................................................................................12

*No Doubt v. Activision Publ'g, Inc.*,
   702 F. Supp. 2d 1139 (C.D. Cal. 2010) ....................................................................9, 10

**Statutes**

17 U.S.C. § 102(a)(7) ..................................................................................................6

17 U.S.C. §§ 106(1), (2), (6) .......................................................................................7

17 U.S.C. § 301(a) .......................................................................................................4

Cal. Civ. Code § 3344(a) ...........................................................................................13

Cal. Civ. Code § 3344(e) ...........................................................................................13

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) .....................................................................................1, 4, 17

## INTRODUCTION

Defendant Sirius XM Radio Inc. ("SXM") respectfully moves to dismiss Plaintiff John Melendez's ("Plaintiff" or "Mr. Melendez") Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

SXM offers a national radio service providing over 300 satellite radio and Internet streaming channels and on-demand content to subscribers across the country (the "SXM Service").  In 2006, SXM added radio personality Howard Stern to its offerings with live episodes of *The Howard Stern Show* (the "HS Show") and related material, including recordings of episodes of the HS Show broadcast before 2006 (the "HSS Archives").  Mr. Melendez alleges that he began participating in the HS Show as a cast member known as "Stuttering John" in 1998 and left the show in 2004 (all before SXM began broadcasting the HS Show in 2006).  For nearly fifteen years since the SXM Service began to broadcast the HS Show, Mr. Melendez has not had nor raised any complaints regarding SXM's broadcast of the HS Show, including HSS Archives. Only now, without explanation for his nearly decade and a half of delay, has Mr. Melendez come forward to assert a purported violation of his right of publicity under California statutory law and common law.  Dkt. No. 1 ("Complaint") at ¶¶ 39-50.  As shown below, Mr. Melendez's claims are baseless and should be dismissed with prejudice for multiple independent reasons.

*First*, Mr. Melendez's state law right of publicity claims are preempted by federal copyright law.  These claims allege nothing more than SXM broadcasting HSS Archives, which are copyrighted recordings and therefore these claims cannot proceed.

*Second*, Mr. Melendez inexplicably sat on his purported claims for nearly fifteen years. This extensive delay objectively manifests implied consent to SXM's alleged use of his voice and image in the HSS Archives.  This is not surprising as Mr. Melendez's entire career since leaving the HS Show has been trading on whatever fleeting moments of public exposure he had

as an occasional cast member of the HS Show, and for nearly fifteen years has simply sought to benefit from SXM's broadcast of HSS Archives that included his intermittent appearances.

*Third*, setting aside federal preemption and his consent, Mr. Melendez also fails to satisfy the requirements for a state law claim because (1) his Complaint amounts to nothing more than allegations that SXM makes its subscribers aware that HSS Archives will be broadcast; and (2) he has provided no allegations of actual damages; this is not surprising given that it strains credulity to allege injury to his purported fame by broadcasting the HSS Archives that created his fame in the first place.

The timing of the Complaint confirms the baselessness of Mr. Melendez's claims as it coincides with news reports about whether Howard Stern will renew his contract with SXM before the end of 2020.  Indeed, the Complaint outlines Mr. Melendez's résumé, providing a myriad of "allegations" that tout his purported fame as Stuttering John resulting from his participation on the HS Show and his subsequent (albeit limited) endeavors over the more than fifteen years since he left the show.  While his resume may help Mr. Melendez try to regain some recognition and notoriety, particularly in view of the HS Show's ongoing popularity, such a publicity stunt cannot serve as a basis for this lawsuit.

Accordingly, for these reasons explained more fully below, SXM respectfully requests that the Court dismiss the Complaint with prejudice.

## FACTUAL BACKGROUND

The HS Show is one of the most successful radio programs of all time.  Mr. Melendez began his participation on the HS Show in 1988 as an intern and then as a member of the cast.  Mr. Melendez left the HS Show for a position on television over 15 years ago.  Complaint at pp.

1-2.[1]  Mr. Melendez concedes that he has already been compensated for his participation on the HS Show after he first agreed to an unpaid internship and then was hired for a paid position for the remainder of his time on the HS Show.  *Id.* at ¶¶ 9, 13.  The HS Show began on terrestrial radio (i.e., on FM Radio when Mr. Melendez participated in the show) and then moved to satellite radio to become part of the SXM Service in 2006 in a well-publicized deal.  *Id.* at ¶ 23.  In the nearly fifteen years from the time SXM began broadcasting the HS Show and HSS Archives, Mr. Melendez never objected or raised any issue to SXM about broadcasting HSS Archives in which he allegedly participated.  *Id.* at ¶¶ 32, 37.

Nevertheless, Mr. Melendez filed this suit in August 2020 alleging that SXM violated his right of publicity under California statutory and common law.[2]  *Id.* at ¶¶ 39-50.  The Complaint is solely premised on SXM's rebroadcasting of the HSS Archives, and does not allege any other activity by SXM that could give rise to any of its claims.  The Complaint acknowledges that SXM has a license and is permitted to broadcast the HSS Archives.  *See, e.g.*, *id.* at pp. 1-2; ¶¶ 18, 30, 33, 34.  Yet the Complaint offers no explanation for why Mr. Melendez is only now breaking well over fifteen years of silence on the subject of SXM's broadcasts of the HS Show and HSS Archives.  Mr. Melendez nonetheless seeks, among other things, compensatory damages, unspecified "other damages," and "an order permanently enjoining Sirius XM from continuing" to re-broadcast the HSS Archives.  *Id.* at p. 13.  As shown below, his demands and claims are unfounded.

---

[1] SXM assumes the truth of the allegations in the Complaint solely for the purposes of the instant motion.

[2] Plaintiff brought his claims under California law and SXM assumes solely for purposes of the instant motion that such law applies, and reserves the right to raise choice of law issues in the event this case proceeds beyond the instant motion.

## ARGUMENT

Plaintiff's Complaint should be dismissed for failure to state a claim upon which relief can be granted because Mr. Melendez's Complaint (1) is preempted by federal copyright law; (2) demonstrates his implied consent to the purported use of the HSS Archives; and nevertheless (3) cannot plead a cognizable state law right of publicity claim as it fails to allege the requisite commercial purpose or injury for such a claim. *See* Fed. R. Civ. Proc. 12(b)(6).

To survive dismissal, a complaint must include sufficient facts to state a claim for relief that is "plausible on its face" and are "enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Notably, a plaintiff must allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* The Court need not accept as true legal conclusions, unwarranted factual inferences, or "[t]hreadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Where, as here, the plaintiff fails to meet this standard, dismissal with prejudice is appropriate. *Hunt v. All. N. Am. Gov't Income Tr., Inc.*, 159 F.3d 723, 728 (2d Cir. 1998) (internal citations omitted); *see also Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1011 (9th Cir. 2017) (affirming dismissal of California right of publicity claims with prejudice due to preemption under federal copyright law).

## I.    Plaintiff's State Right of Publicity Claims are Preempted by Federal Copyright Law

At their core, Mr. Melendez's state law right of publicity claims amount to nothing more than copyright claims that are preempted by federal law. State right of publicity claims cannot stand where the plaintiff seeks to enforce rights reserved to copyright owners. 17 U.S.C. § 301(a) (Copyright Act exclusively governs works within its scope, and "no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State"); *Jules Jordan Video, Inc. v. 144942 Canada Inc.*, 617 F.3d 1146, 1155 (9th Cir. 2010);

*Fleet v. CBS, Inc.*, 50 Cal. App. 4th 1911, 1919-1921 (1996) (preemption applied "to prevent a party from exhibiting a copyrighted work [recorded performances airing on CBS]").

Starting on the first page, Mr. Melendez's Complaint is transparent that the purported "thousands of radio clips featuring 'Stuttering John's' voice" and the "archival recordings prominently featuring Plaintiff" form the sole basis of his claims.  Complaint at p. 1.  The following provides examples of such allegations limited to broadcasting the HSS Archives:

> "Sirius XM continues to exploit Mr. Melendez' identity, likeness, name, image and voice in violation of his right of publicity, ***as it continuously airs old shows*** featuring Mr. Melendez …" Complaint at pp. 1-2 (emphasis added).

> "[Sirius XM] ***continuously airs old clips*** from the HSS Archives featuring Mr. Melendez without his permission …"  *Id.* at p. 2 (emphasis added).

> Plaintiff allegedly "became known for some of the most unforgettable on-air moments which remain ***classics replayed incessantly as part of the HSS Archives*** …"  *Id.* at ¶ 18 (emphasis added).

> "[U]pon information and belief, there exists [sic] more than ***approximately 13,000 hours of episodes of the HSS*** in which Mr. Melendez' voice, name, and identity are featured."  *Id.* at ¶ 30 (emphasis added).

> "Upon information and belief, every episode of the HSS that Mr. Melendez participated in has been digitally recorded and stored, and comprise the HSS Archives that are used to supplement the live recordings of the show on Sirius XM . . ."  *Id.* at ¶ 31 (emphasis added).

> "Sirius XM continues to ***air old episodes or parts of episodes*** from the HSS Archives featuring Mr. Melendez for the 15 years he performed on the show."  *Id.* at ¶ 34 (emphasis added).

Critically, these allegations are limited to broadcasting clips of HSS Archives and the Complaint does not allege any other actions by SXM that could give rise to a right of publicity

claim.  Because these state law claims are limited to broadcasting copyrighted materials, they are preempted by federal law and should be dismissed with prejudice.

> **A.      The Two Prong Test for Federal Preemption is Easily Satisfied**

Copyright preemption applies to Mr. Melendez's right of publicity claim because (1) the assertion of the right is actually against a work of authorship fixed in a tangible medium of expression within the purview of the Copyright Act; and (2) the plaintiff asserts "a claim that is the equivalent of a claim for infringement of a copyrightable work."  *Jules Jordan Video*, 617 F.3d at 1154-55.

For starters, the HSS Archives that Mr. Melendez alleges at issue are unquestionably copyrightable subject matter as they are recordings fixed in a tangible medium as the excerpts from the Complaint listed above confirm.  *See* 17 U.S.C. § 102(a)(7) ("original works of authorship fixed in any tangible medium" expressly include "sound recordings").  Indeed, Mr. Melendez concedes this as confirmed in his opposition to SXM's request for permission to file the instant motion (Dkt. No. 17).  Thus, the first prong of the preemption test is satisfied.

Next, Mr. Melendez seeks to enforce rights expressly reserved to copyright holders, thereby satisfying the second prong of the test.  More specifically, the remedies that Mr. Melendez requests include compensatory damages and "an order permanently enjoining Sirius XM from continuing the improper acts herein."  *See* Complaint at p. 13, ¶¶ A-B.  Yet the complained-of conduct is no more than an allegedly unauthorized rebroadcasting of a copyrighted work – namely, the HSS Archives.  Seeking compensation for and control over the exhibition of a copyrighted work is equivalent to invoking the rights exclusively reserved to copyright owners, including at least the rights "to reproduce the copyrighted work," "to prepare derivative works based upon the copyrighted work," and "to perform the copyrighted work

- 6 -

publicly by means of a digital audio transmission."  17 U.S.C. §§ 106(1), (2), (6).  Mr. Melendez

is thus prohibited from raising such claims or invoking any such rights.

Any purported attempt to circumvent this bar to Mr. Melendez's claims by drawing a

fabricated distinction between copyrighted works and the use of one's voice lacks any basis or

merit.  In particular, California and other courts have repeatedly considered and declined to

permit allegations similar to those presented by Mr. Melendez where broadcasting of a

performer's voice captured within a copyrighted work is the alleged basis of a right to publicity

claim.  *See* Dkt. No. 17 at 3 (claiming voice is separable from the recordings).  As one California

court explained, "using the copyrightable sound recording that captured that voice" cannot

constitute a purported violation of the right of publicity.  *Laws v. Sony Music Entm't, Inc.*, 294 F.

Supp. 2d 1160, 1165 (C.D. Cal. 2003), *aff'd*, 448 F.3d 1134 (9th Cir. 2006).  As the Court

reasoned, to hold otherwise would flout Congressional intent by allowing "any vocal sound

recording [to] fall outside the parameters of the Copyright Act because of the use of a person's

'voice.'" *Laws*, 294 F. Supp. 2d at 1165.

The *Laws* case is instructive here.  There, the court found preemption when the plaintiff

sought to recover compensatory damages and injunctive relief for defendant Sony's use of

original recordings of plaintiff's song which Sony had licensed.  *Laws*, 294 F. Supp. 2d at 1164-

65.  This is precisely the case here, as SXM is licensed to use the original recordings of the HSS

Archives which allegedly contain Mr. Melendez's voice, and Mr. Melendez seeks to block

SXM's ability to use the HSS Archives.

Other cases have similarly found preemption based on allegations like those made by Mr.

Melendez here.  For example, in *Jules Jordan Video,* the plaintiff alleged a state right of

publicity claim "based entirely on the misappropriation of the DVDs and [plaintiff's]

performance therein . . ." where the plaintiff alleged that his "name, likeness, photograph, and voice appear in the counterfeit Gasper Films without his authorization."  617 F.3d at 1153-54. The Court rejected these allegations as preempted by federal copyright law, explaining that the "essence of [plaintiff's] claim is that the Kaytel defendants reproduced and distributed the DVDs without authorization."  *Id.* at 1155.

Similarly, in *Fleet,* the court rejected a plaintiff's state right of publicity claim, holding that "[s]ince their section 3344 claims seeks only to prevent CBS from reproducing and distributing their performances in the film, their claims must be preempted by federal copyright law."  50 Cal. App. 4th at 1912.  The court reasoned that "it was not merely appellant's likenesses which were captured on film—it was their dramatic performances which are, as we have seen, copyrightable.  An actor who wishes to protect the use of the image contained in a single, fixed dramatic performance need simply retain the copyright."  *Id.*; *see also Maloney*, 853 F.3d at 1011 (discussed in detail *infra*, Part I(B)); *see also Lavery v. Westwood One, Inc.*, No. B179672, 2005 WL 2327320, at *5 (Cal. Ct. App. Sept. 23, 2005) (affirming dismissal of complaint based on right of publicity where plaintiff sought not "to recover for an authorized use of her name, voice or likeness in the *original* broadcasts of the radio show, but for the use of her name, voice or likes allegedly unauthorized in *rebroadcasts* . . .").

For at least these reasons, the Complaint should be dismissed with prejudice because Mr. Melendez concedes that the HSS Archives are a copyrighted work and he alleges nothing more than the rebroadcasting of that work with his performance purportedly without authorization which cannot and does not rise to the level of a claim for relief.

### B.     Plaintiff Relies on Cases that Confirm His Claims are Preempted by Federal Copyright Law

Mr. Melendez confirmed the untenable nature of his claims through his opposition to SXM's request for leave to file this motion.  In that opposition, Mr. Melendez cited several cases as purportedly demonstrating that "[a] person's name or likeness is not a work of authorship within the meaning of [the federal Copyright Act]."  Dkt. No. 17 at 3 (alternation in original). However, even a cursory review of these cases confirms that his claims are preempted by federal copyright law.

Mr. Melendez first cites to the Ninth Circuit's decision in *Maloney v. T3Media*.  But *Maloney* found that preemption should apply when the claim is for "a likeness captured in a copyrighted work where the work itself is being distributed," which "interferes" with the exclusive rights of a copyright holder.  *Maloney*, 853 F.3d at 1011 (affirming order striking claims with prejudice).  The *Maloney* plaintiffs' claims failed because they could not allege "any use of their likenesses independent of the display, reproduction, and distribution of the copyrighted material in which they are depicted.  We have held that under those circumstances, ***none*** of plaintiffs' claims is qualitatively different from a copyright claim."  *Id.* (emphasis in original) (citing *Laws v. Sony Music Entm't, Inc.,* 448 F.3d 1134, 1137 (9th Cir. 2006)).  That is precisely the situation here.  Mr. Melendez seeks to control the exhibition of an indisputably copyrighted work and has no substantive allegations other than those regarding that exhibition. Thus, *Maloney* plainly dictates dismissal of Mr. Melendez's claim.

Mr. Melendez also purports to rely on *No Doubt v. Activision*.  However, in citing to that case, Mr. Melendez studiously ignores the relevant portion of the opinion which again dictates dismissal of his claim.  Specifically, *No Doubt* notes that "if Plaintiff were suing on the basis of Defendant's misuse of Plaintiff's songs or videotaped musical performance, its claims would be

preempted by the Copyright Act." *No Doubt v. Activision Publ'g, Inc.*, 702 F. Supp. 2d 1139, 1145 (C.D. Cal. 2010). That is exactly the claim Mr. Melendez is now pursuing. The claims permitted to stand in *No Doubt* are completely different from those Mr. Melendez alleges because the issue there was a classic "look-alike" case – that is, the defendant designed a cartoon character using the plaintiff as the template for the character. *No Doubt,* 702 F. Supp. 2d at 1145-46. By contrast, here, Mr. Melendez does not make any "look-alike" allegations; rather, he alleges only that he made willing appearances in recorded performances captured in the HSS Archives which allegedly have been replayed.

Mr. Melendez's reliance on the Ninth Circuit's decision in *Downing v. Abercrombie* fails for the same reason. The misappropriation in *Downing* was based on a clothing retailer's use of images of well-known surfers to advertise a new clothing line in a catalog that was thematically designed around the surfers whereby the advertisement matched what the surfers wore in the images. *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 999-1000 (9th Cir. 2001). No similar allegation is proffered in the Complaint here.

Notably, the Ninth Circuit in *Maloney* expressly cautioned that courts should ***not*** rely on its decision in *Downing* as a bright-line rule that a likeness embodied in a copyrighted work is automatically a potential basis for a misappropriation claim. *Maloney*, 853 F.3d at 1012-13. Yet that is precisely what Mr. Melendez is attempting to do here.

In short, Mr. Melendez has not come forward with a single case holding that he can assert a right of publicity claim based on SXM's broadcasting of the copyrighted HSS Archives, and every case he has attempted to cite dictates dismissal of his state law claims.

## II.   Plaintiff's Years of Silence Constitute Implied Consent to SXM's Alleged Use of the HSS Archives

The Complaint concedes that SXM has broadcasted the HS Show since 2006 and the subsequent HSS Archives, but offers no explanation for Mr. Melendez's silence during this nearly fifteen year period of time.  Such silence objectively manifests consent to the broadcasts of the HSS Archives, dictating dismissal of all of Mr. Melendez's claims.

A plaintiff need not expressly consent to use of his name or likeness—California recognizes that consent "may be implied from the consenting party's conduct and the circumstances of the case."  *Jones v. Corbis Corp.*, 815 F. Supp. 2d 1108, 1113 (C.D. Cal. 2011), *aff'd*, 489 F. App'x 155 (9th Cir. 2012) (consent through conduct is a defense to both statutory and common law rights of publicity).  Notably, "Plaintiff's subjective beliefs as to [his] consent are not determinative; consent is measured from Plaintiff's manifested action or inaction."  *Id.* at 1114.

Here, Mr. Melendez's silence constitutes implied consent.  Mr. Melendez never raised an objection to SXM's exhibition of any Stern-related content, such as the HSS Archives, until just before filing this case in mid-2020.  Notably, he does not claim to have only just discovered that the HSS Archives were being broadcast, nor does he claim that he was unaware that the HS Show was being recorded during the years in which he was occasionally appear on the show.  Instead, the Complaint expressly acknowledges these broadcasts.  *See, e.g.*, Complaint at ¶¶ 30-32 (describing that the HS Show was recorded and then describing the public details of the introduction of Mr. Stern to the SXM Service, without claiming ignorance of either at the time they occurred).

Given that SXM is a leading entertainment programmer and platform with an expansive audience, Mr. Stern is one of the most famous radio personalities in the United States, and Mr.

Stern's addition to the SXM Service, worth hundreds of millions of dollars, was well-publicized. Mr. Melendez could not plausibly allege otherwise or even try to claim ignorance.  This is further confirmed by Mr. Melendez's allegations that he continued to work in the entertainment industry by using his alleged fame from participating on the HS Show to leverage a position on *The Tonight Show with Jay Leno* for a number of years.  Despite all of this, for years, Mr. Melendez remained silent, saying nothing to SXM about the alleged broadcasts of the HSS Archives.

Notably, when opposing SXM's request to file this Motion, Mr. Melendez maintained his silence on the issue, having no response to SXM's explanation of his implied consent, other than to reiterate that he alleges that he never expressly consented.  *See* Dkt. No. 17 at 3 (citing Dkt. No. 1 at ¶ 44 ("[a]t no time has Mr. Melendez consented to Sirius XM's use of his . . . image and voice")).  His years of silence unquestionably constitutes and amounts to implied consent under these circumstances as the case law confirms.  *See, e.g., Jones*, 815 F. Supp. 2d at 1113 (actress gave consent to use of her likeness in red carpet photographs as she had not complained for several years despite knowing the intended usage which was also industry practice); *see also Newton v. Thomason*, 22 F.3d 1455, 1461 (9th Cir. 1994) (rejecting plaintiff's claim that he never expressly consented to the use of his name in television show because he showed excitement to be featured and failed to object for several months).  Accordingly, Mr. Melendez fails to state a claim for relief as his silence constitutes his implied consent.

## III.    Plaintiff Has Failed to Allege Facts Rising to the Level of a Right of Publicity Claim

A third independent basis to dismiss Mr. Melendez's claims is their failure to rise to the level of a purported violation of the right of publicity under California law.  A common law claim for misappropriation of a right of publicity requires: "(1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage,

- 12 -

commercially or otherwise; (3) lack of consent; and (4) resulting injury." *Jones,* 815 F. Supp. 2d at 1113 (internal citations and quotations omitted).  Its statutory counterpart requires "all the elements of the common law cause of action" plus "a knowing use [without consent] by the defendant as well as a direct connection between the alleged use and the commercial purpose." *Id.*  Mr. Melendez has failed to sufficiently plead at least a cognizable commercial purpose or other advantage, or any resulting injury.

> **A.**     **The Complaint Fails to Plead A Cognizable Commercial Purpose or Advantage.**

The right of publicity is about protecting a celebrity's likeness, identity, and personal characteristics like the use of one's voice or image to advertise a proposed commercial transaction for a product or service.  *Gionfriddo v. Major League Baseball*, 94 Cal. App. 4th 400, 413-15 (2001).  In fact, while California Civil Code Section 3344(a) outlines the general statutory basis for right of publicity claims, Section 3344(e) provides a specific carveout: "[t]he use of a name, voice, signature, photograph, or likeness in a commercial medium shall not constitute a use for which consent is required under subdivision (a) ***solely because the material containing such use is commercially sponsored or contains paid advertising***."  Cal. Civ. Code § 3344(e) (emphasis added).  Yet the only alleged commercial activity that Mr. Melendez has pled is merely that SXM is a business with subscription-based offerings, that it promotes its own content to its subscribers, and that it also hosts advertisements.  *See, e.g.*, Complaint at ¶¶ 31, 34.  Such allegations fall squarely within the statute's exception under subsection (e).

The Complaint further fails to allege that SXM has used Mr. Melendez in a way that endorses SXM or endorses advertisements placed on SXM's channels, relying instead on the unremarkable contention that SXM plays the HSS Archives which sometimes allegedly include Mr. Melendez.  Such broadcasts do nothing more than alert SXM subscribers of a rebroadcast of

HSS Archives.  As a commonsense example, when Netflix advertises a movie on its platform, there is no resulting concern that the advertisement of the movie comprises an endorsement by the performers in that movie to subscribe to Netflix.  Instead, the promotion of the movie is making subscribers aware that the movie is available on Netflix.

As case law confirms, the promotion of HSS Archives as alleged is just that—making subscribers aware that HSS Archives will be available on the SXM Service.  This does not result in any purported improper use of a performer's identity or likeness within the meaning of California's misappropriation law simply because Mr. Melendez so alleges.  *See, e.g.*, *Laws*, 294 F. Supp. 2d at 1165 (neither using sound recording of a singer's voice nor accurately crediting the singer on the song jacket was a misappropriation); *Daly v. Viacom, Inc.*, 238 F. Supp. 2d 1118, 1123 (N.D. Cal. 2002) (use of snippets or trailers for advertising is permitted when they are used to accurately advertise the performers in a performance to be exhibited); *see also Gionfriddo*, 94 Cal. App. 4th at 413-14 (misappropriation for a commercial purpose is intended to address conduct such as using plaintiff's identity to promote products where "the primary message is 'buy'").

Thus, Mr. Melendez has failed to allege any facts showing that SXM purportedly uses Mr. Melendez's name, likeness, or voice for a commercial purpose or other gain.

### B.     The Complaint Cannot Allege Any Injury Because None Exists

Mr. Melendez cannot state a cognizable right of publicity claim because he cannot allege any injury.  Indeed, Mr. Melendez can only have benefitted from SXM's alleged use of the HSS Archives.  As the Complaint concedes, it was his appearance on the HS Show that created Mr. Melendez's alleged fame in the first place.  Complaint at ¶¶ 7-16.

 *Gionfriddo* is instructive.  In *Gionfriddo,* the Court explained that "[t]he right to exploit commercially one's celebrity is primarily an economic right."  94 Cal. App. 4th at 415.  But,

where the "Plaintiffs never suggest how Baseball's [defendant's] actions impair their economic interests" and "[i]t appears equally likely that plaintiffs' marketability is enhanced by Baseball's conduct challenged here," there can be no actionable right of publicity claim.  Likewise, here, there can be no doubt that there is no actionable right of publicity claim as Mr. Melendez complains that the alleged broadcasting of his performance on HSS Archives that created his celebrity in the first place has now purportedly injured him.  In short, he cannot have it both ways.

Indeed, Mr. Melendez has not asserted a single fact suggesting harm to him economically or otherwise.  If there had been any actual harm, Mr. Melendez surely could have recited a single example of such harm, particularly when he is suing for compensation for what he alleges were years of harm.  The lack of any allegation relating to damages coupled with his reliance on a purely conclusory allegation of damages (Complaint at ¶ 45), and his admission that the very fame he claims has been injured is based on broadcasts of the HSS Archives which gave him any purported fame in the first place, demonstrate that Mr. Melendez fails to state a claim for his statutory and common law claims.

## **CONCLUSION**

For these reasons, SXM respectfully requests that the Court dismiss the entirety of the Complaint with prejudice.

Respectfully submitted,

Dated:  December 4, 2020

*/s/ Mark A. Baghdassarian*
Mark A. Baghdassarian
Shannon H. Hedvat
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, NY 10036
Telephone:  (212) 715-9193
mbaghdassarian@kramerlevin.com

- 15 -

*Attorneys for Defendant Sirius XM Radio Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on December 4, 2020, I served the foregoing Memorandum of Law in

Support of Defendant Sirius XM Radio Inc.'s Motion to Dismiss Pursuant to Fed. R. Civ. P.

12(b)(6), by ECF and email on all counsel of record:

Michael Steven Popok
Hamutal Lieberman
Brent Matthew Reitter
Zumpano Patricios & Popok
417 Fifth Avenue, Suite 826
10016
New York, NY 10022
212-542-2564
Fax: 212-320-0332
mpopok@zplaw.com
hlieberman@zplaw.com
breitter@zplaw.com

*Attorneys for Plaintiff*
*John Melendez*

<u>*/s/ Mark A. Baghdassarian*</u>
Mark A. Baghdassarian