UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
JOHN EDWARD MELENDEZ,                            :
                                                 :
                            *Plaintiff*,         :       1:20-cv-6620-PAC
                                                 :
            - *against* -                        :       **OPINION & ORDER**
                                                 :
SIRIUS XM RADIO, INC.,                           :
                                                 :
                            *Defendant*.         :
-----------------------------------------------------------------X

      In this diversity action,[1] Defendant Sirius XM Radio, Inc. ("Defendant," "Sirius") moves,

pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss Plaintiff John Edward

Melendez's ("Plaintiff," "Melendez") Amended Complaint for failure to state a claim upon

which relief can be granted.  Melendez claims that Defendant violated the California Civil Code

and his California common law right of publicity by currently using his name, voice, and

likeness as recorded on *The Howard Stern Show* ("HS Show") 17 to 33 years ago.  Melendez did

not protest this use until he filed this lawsuit in 2020.  Sirius argues that Plaintiff's claims for

violation of his rights of publicity under California law (1) are preempted by 17 U.S.C. § 301

(the "Copyright Act")[2]; (2) fail because Plaintiff impliedly consented to Sirius' use of the sound

---

[1] "Plaintiff is a resident and citizen of the State of California," and "Defendant is a [Delaware]
corporation . . . with its principal place of business" in New York.  Am. Compl. ¶¶ 1–2, ECF No.
20.  Plaintiff alleges that the amount in controversy exceeds $75,000, *id.* at ¶ 3, and Defendant
does not contest the Court's jurisdiction over this action.  *See generally* Def.'s Mem. Supp. Mot.
Dismiss, ECF No. 26.

[2] Sirius does not raise any defenses of implied preemption, so the Court has not considered
implied preemption in this opinion.  *See Broker Genius Inc. v. Seat Scouts LLC*, No. 17-Cv-
8627, 2019 WL 3000963, at *5 (S.D.N.Y. July 10, 2019), *aff'd sub nom. Broker Genius Inc. v.
Gainor*, 810 F. App'x 27, 32 (2d Cir. 2020) (holding that federal preemption is an affirmative
defense); *see also Insolvency Servs. Grp., Inc. v. Samsung Elecs. Am., Inc.*, No. 20 Civ. 8179,
2021 WL 871434, at *2 (S.D.N.Y. Mar. 8, 2021) (noting that a court may consider a preemption
defense on a Rule 12(b)(6) motion "if that defense appears on the face of the complaint").

recordings at issue; and (3) fail to allege a cognizable commercial advantage to Sirius or injury to Melendez.  Even if the Amended Complaint pleads facts sufficient to state a claim for relief under California law, the Court agrees with Sirius that Plaintiff's state law claims are preempted by § 301 of the Copyright Act.[3]  Accordingly, the Court dismisses the Amended Complaint with prejudice.

## **BACKGROUND**

John Edward Melendez, known professionally as "Stuttering John," is a celebrity comic who has featured in movies, hosted television shows, and starred in an off-broadway production. Am. Compl. 1, 3–4, ¶ 17, ECF No. 20.  He has recorded a rock and roll album, launched a podcast, and published a memoir. *Id.* at ¶¶ 17, 25, 28.  He is "admired by tens of millions of fans." *Id.* at ¶ 1.

Melendez's famous alter ego, Stuttering John, started "as an unpaid administrative intern" on the HS Show in 1988. *Id.* ¶¶ 7–10.  At that time, the nationally-syndicated HS Show was broadcast from WXRK, a New York radio station owned by Infinity Broadcasting.  *Id.* at ¶ 7.  Following his first two years as an unpaid intern, Melendez earned "approximately $35,000 per year" on the HS Show. *Id.* at ¶¶ 9, 13.

Melendez soon became known for his Stuttering John "interviews"—"radio segments in which he as a stunt asked politicians and celebrities impertinent, confrontational, and intentionally clueless questions in the street, at red carpet events and during promotional appearances and press conferences to shock his targets and elicit laughs." *Id.* at ¶ 10.  Plaintiff

---

[3] *See Roberts v. BroadwayHD LLC*, — F. Supp. 3d —, No. 19 Civ. 9200, 2021 WL 467292, at *9–10 (S.D.N.Y. Feb. 9, 2021) (assuming without deciding that unjust enrichment claim was adequately plead and dismissing claim upon finding that it was preempted by 17 U.S.C. § 301).

2

remained on the HS Show as a writer and performer from 1988 until 2004, when he left to become the announcer for Jay Leno's *The Tonight Show*. *Id.* at ¶¶ 12, 23.

It would take a person nearly a year and a half to listen to every episode of the HS Show featuring Melendez, as "there exist more than approximately 13,000 hours of episodes" in which his "voice, name and identity are featured." *Id.* at ¶ 30. Melendez alleges that every one of these episodes "has been digitally recorded and stored[,] and comprises the HSS Archives that are used to supplement the live recordings of the show on Sirius XM, to promote the show to Sirius XM's subscriber and listener base, and to generate advertising dollars for Defendant." *Id.* at ¶ 31.

In 2006, two years after Melendez had left the HS Show, Howard Stern signed a deal with Sirius to move his show from terrestrial radio to Sirius' subscription-based satellite radio service. *Id.* at ¶ 32. Sirius dedicated two channels to Howard Stern: "'Howard 100' and 'Howard 101'" (the latter of which is "based entirely on the HSS Archives"). *Id.* As part of this deal, "Defendant claims to have acquired a license to air current episodes of the show, and to air full or partial episodes from the HSS Archives that feature Mr. Melendez as 'Stuttering John.'" *Id.* at ¶ 33. Sirius "incessantly" replays parts of the HSS Archives featuring Melendez, and advertises on its other radio channels Stuttering John's participation in the episodes. *Id.* at ¶¶ 18, 34. According to Melendez, Sirius "continuously airs old shows featuring Mr. Melendez," and "through its online social media platforms, in on-air advertising, and otherwise, Sirius XM uses Plaintiff's Attributes [(defined as his 'identity, persona, name, and image' (*id.* at 2))] to promote and advertise his appearance on the old shows because of Mr. Melendez'[s] own independent celebrity and fame." *Id.* at 2, ¶ 35.

Melendez alleges that Sirius "has used and continues to use Plaintiff's Attributes [(along with his voice, *see id.* at 1, 3, ¶¶ 5, 30)] knowingly and deliberately, without his prior consent,

for the purposes of advertising or selling, or soliciting purchases of products, merchandise, goods or services, including, but not limited to, Sirius XM in general." *Id.* at ¶ 44; *see also id.* at 2. Accordingly, Melendez claims that Sirius has violated and is violating his rights of publicity under California Civil Code § 3344 and California common law. *Id.* at ¶¶ 40–52.

## DISCUSSION

### I.   Standard for Rule 12(b)(6) Motions to Dismiss

To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (cleaned up).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  While the court must accept all the plaintiff's well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  Thus, a pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

In deciding a Rule 12(b)(6) motion, the court may consider both "the allegations on the face of the complaint" and "[d]ocuments that are attached to the complaint or incorporated in it by reference." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).

## II.     Elements of Right of Publicity Claims Under California Law[4]

California's common law arms its citizens with a cause of action for the misappropriation

of their right of publicity.  To state a claim under that cause of action, the plaintiff must plead:

"(1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or

likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; and (4)

resulting injury." *Brown v. Showtime Networks, Inc.*, 394 F. Supp. 3d 418, 437 (S.D.N.Y. 2019)

(quoting *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1001 (9th Cir. 2001)).  California

Civil Code § 3344 provides complementary protection "and adds two elements [to those required

under California common law]: (1) the use of the person's identity must have been knowing; and

(2) there must have been 'a direct connection between the use [of plaintiff's identity] and the

[defendant's] commercial purpose.'" *Estate of Smith v. Cash Money Recs., Inc.*, No. 14cv2703,

2018 WL 2224993, at *12 (S.D.N.Y. May 15, 2018) (quoting *Abdul-Jabbar v. Gen. Motors

Corp.*, 85 F.3d 407, 414 (9th Cir. 1996)) (first alteration added, others in original).  "While the

common law right allows the use to be to a defendant's advantage 'commercial or otherwise,'

under § 3344, the use must be commercial." *Id.*  Section 3344(a) provides:

> Any person who knowingly uses another's name, voice, signature, photograph, or
>
> likeness, in any manner, on or in products, merchandise, or goods, or for purposes
>
> of advertising or selling, or soliciting purchases of, products, merchandise, goods
>
> or services, without such person's prior consent . . . shall be liable for any damages
>
> sustained by the person or persons injured as a result thereof.

---

[4] The parties agree, for the purposes of this motion, that California law applies to Plaintiff's
claims. Def.'s Mem. Supp. Mot. Dismiss 4 n.2. Thus, "the Court need not perform a choice of
law analysis." *Bruce Lee Enters., LLC v. A.V.E.L.A., Inc.*, No. 10 Civ. 2333, 2011 WL 1327137,
at *1 n.1 (S.D.N.Y. Mar. 31, 2011).

### III.    Statutory Preemption

Plaintiff's claims are preempted by § 301 of the Copyright Act. "At the pleading stage, preemption constitutes grounds for dismissal only 'if the statute's barrier to suit is evident from the face of the complaint.'" *K.D. Hercules, Inc. v. Laborers Local 78 of Laborers' Int'l Union of N. Am,* No. 20 Civ. 4829, 2021 WL 1614369, at *2 (S.D.N.Y. Apr. 26, 2021) (quoting *Ricci v. Teamsters Union Local 456,* 781 F.3d 25, 28 (2d Cir. 2015)). Statutory preemption applies if (1) "the work that would be affected by the plaintiff's exercise of a state-created right" "come[s] within the subject matter of copyright as specified by sections 102 and 103" of the Copyright Act, and (2) the right plaintiff asserts is "*equivalent* to any of the exclusive rights within the *general scope of copyright* as specified by section 106." *In re Jackson,* 972 F.3d 25, 42–43 (2d Cir. 2020) (quoting 17 U.S.C. § 301(a)). The first part of the test is the "subject matter" requirement, while the second is the "equivalence" requirement. *Id.* at 43.

Drawing all reasonable inferences in Plaintiff's favor, the Court assumes that the sound recordings at issue (the HSS Archives) are not copyrighted.[5] For purposes of statutory preemption, however, it does not matter whether the work at issue is copyrighted. Instead, a claim is "subject to the possibility of statutory preemption" "if the work against which the plaintiff claims rights" falls within the subject matter of copyright, "even if the subject of the claim if for some reason ineligible for copyright protection," e.g., because it is too minimal to gain protection, or because it has "fallen into the public domain." *Id.* at 42–43 & n.16.

---

[5] *See* Am. Compl. ¶ 33 ("Defendant *claims* to have acquired a license to air . . . full of partial episodes from the HSS Archives that feature Mr. Melendez as 'Stuttering John.'"); Pl.'s Mem. Opp'n 12, ECF No. 27 (referring to the HSS Archives as "*purportedly* copyrighted") (emphases added).

Throughout the remainder of this opinion, the Court refers to works within the subject matter of copyright as "copyrightable." *See id.* at 45.

It follows that a defendant need not be a copyright holder or licensee to invoke statutory preemption. *Id.* at 42–43 & n.16, 54; *Jules Jordan Video, Inc. v. 144942 Canada, Inc.*, 617 F.3d 1146, 1154–55 (9th Cir. 2010) ("Whether a claim is preempted under Section 301 does not turn on what rights the alleged infringer possesses, but on whether the rights asserted by the plaintiff are equivalent to any of the exclusive rights within the general scope of the copyright." Thus, "[i]f a plaintiff asserts a claim that is the equivalent of a claim for infringement of a copyrightable work, that claim is preempted, regardless of what legal rights the defendant might have acquired.").

Both parties' arguments regarding statutory preemption are somewhat wide of the mark. Plaintiff contends that the subject matter of his claims is Sirius' use of his non-copyrightable Attributes, and therefore the subject matter requirement is not satisfied. Pl.'s Mem. Opp'n 10–13, ECF No. 27; *see Jackson*, 972 F.3d at 45, 52 (rejecting the same argument). Yet

> [c]ourts have invoked § 301 to justify preemption of right of publicity claims, notwithstanding the contentions of the plaintiffs that their suits were directed against unauthorized use of their names or likenesses, on the conclusion that the invocation of the publicity right was a pretextual justification for an effort to prevent or otherwise control the reproduction or dissemination of a copyright[able] work.

*Jackson*, 972 F.3d at 46 (discussing *Ray v. ESPN, Inc.*, 783 F.3d 1141, 1141 (8th Cir. 2015) and *Laws v. Sony Music Ent., Inc.*, 448 F.3d 1134, 1136 (9th Cir. 2006)).

Sirius, meanwhile, argues that the subject matter requirement is satisfied because the sound recordings at issue are within the subject matter of copyright under 17 U.S.C. § 102(a)(7). Def.'s Mem. Supp. Mot. Dismiss 7–8, ECF No. 26.  While Sirius is correct that the sound recordings qualify as "original works of authorship fixed in a[] tangible medium of expression," § 102(a)(7); *see also Jackson*, 972 F.3d at 42–43, 45–46, "the mere fact that a defendant's alleged invocation of the plaintiff's identity is through use of a copyright[able] work does not necessarily mean that the claim of invasion of the right of publicity is an attempt to control that work and is therefore subject to preemption." *Jackson*, 972 F.3d at 47 (discussing *Downing*, 265 F.3d at 999–1005).

The pertinent question is "whether the focus of [Melendez]'s claim is the recognizable sound [and sight] of his [Attributes][6] (which [are] not within the subject matter of copyright) or the copyright[able] work in which [those Attributes are] embodied (which, of course, is within the subject matter of copyright)." *Id.* at 47.  The answer "depend[s] on the gravamen of the claim and the allegations supporting it." *Id.*  "The 'crux of the issue' . . . is whether '[the] claim seeks to vindicate misuse of an individual's likeness,'" e.g., by implying a false endorsement of the defendant's products, or instead "merely interfer[es] with the distribution, display, or performance of a . . . work." *Id.* at 47–48 (quoting *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1012–13 (9th Cir. 2017)) (first and third alterations added).  In the case of a false endorsement, the gravamen of the claim "is the defendant's usurpation of the plaintiff's *identity* to sell a product or service with which the plaintiff has no relevant connection," and "[t]he fact that the defendant employed a copyright[able] work to depict the plaintiff is beside the point." *Id.* at 48.

---

[6] Melendez does not delineate any differences between his name, voice, identity, persona, image, and likeness, so the Court likewise does not distinguish between them. *See Jackson*, 972 F.3d at 45–54 (treating "voice" and "identity" interchangeably).

But where the defendant seeks an advantage that "flows from the reproduction or dissemination of the work itself (as opposed to the persona of the plaintiff)," statutory preemption is more likely. *Id.* at 49.

> In other words, the more the defendant has used a copyright[able] work for its own value, as opposed to using it to exploit the depicted plaintiff's identity, the more the right of publicity claim brought by someone depicted in the work can be considered a disguised effort to control the dissemination of the work.

*Id.* at 50.

Here, Melendez argues that his case is similar to *Downing*, 265 F.3d at 1001–05, and *West v. iHandy Limited*, No. CV 19-10877 PSG, 2020 WL 1303889, at *5–7 (C.D. Cal. Mar. 19, 2020). Pl.'s Opp'n 12–13. It is not. In *Downing*, "the defendant clothing retailer placed a photograph of [plaintiffs] in a catalogue without their permission and identified them by name, and used this in an advertising campaign which included the selling of t-shirts exactly like those worn by the plaintiffs in the photograph." *West*, 2020 WL 1303889, at *6. In *West*, the defendant used a photograph of the plaintiff without her permission in its photo editing application and used the photograph to advertise its application. *Id.* at *1. Both *Downing* and *West* involved the use of plaintiffs' photographs in advertisements of separate products in a manner that falsely implied the plaintiffs' endorsement of those products "with which the plaintiff[s] ha[d] no relevant connection." *Jackson*, 972 F.3d at 48; *Downing*, 265 F.3d at 1003–05; *West*, 2020 WL 1303889, at *5–7. In Melendez's case, by contrast, to the extent that Sirius uses Plaintiff's Attributes to advertise the HS Show, any implied endorsement is of the show itself, which is an "implication of endorsement [that] is immaterial to this analysis." *Jackson*, 972 F.3d at 47 n.27; *cf. Guglielmi v. Spelling-Goldberg Prods.*, 603 P.2d 454, 462 (Cal. 1979)

(Bird, C.J., concurring) ("It would be illogical to allow respondents to exhibit the [work] but effectively preclude any advance discussion or promotion [(i.e., advertisement)] of their lawful enterprise."). Such use is an exploitation or promotion of the work itself, for its own value, rather than an exploitation of the Plaintiff's identity.

Thus, Melendez's claims depend on the viability of his argument that Sirius uses his Attributes, through advertisements on its radio channels and social media accounts, to promote Sirius XM in general and to attract and retain advertisers and service subscribers (i.e., to promote products or services other than the HS Show). *See* Pl.'s Opp'n 11–13, 19.

While the Court draws all reasonable inferences in Plaintiff's favor on this motion to dismiss, the Court still must use its "judicial experience and common sense" in determining whether his allegations are plausible. *Iqbal*, 556 U.S. at 679. Melendez has not plead any facts plausibly suggesting that Sirius' intended audience could reasonably construe advertisements of the HS Show featuring Melendez as Stuttering John as Melendez's endorsement of Sirius XM or any of its non-HS Show channels. *See Jackson*, 972 F.3d at 50. Melendez emphasizes that Sirius plays these advertisements on its other channels, which are unrelated to the HS Show (Pl.'s Opp'n 13 (citing Am. Compl. 2–3)), but he misses the point. The fact that the advertisements appear on non-HS Show channels and social media does not change the character of the advertisements—they are still advertisements *of the HS Show*, not a separate product. The commercial advantage Sirius gains from playing the HSS Archives and running the advertisements flows from the rebroadcasting of the copyrightable sound recordings themselves, not from Melendez's identity. Because the gravamen of Melendez's rights of publicity claims is not the use of his identity but the use of the copyrightable work itself, the focus of his claims is within the subject matter of copyright. *Jackson*, 972 F.3d at 52.

As for the equivalence requirement, the analysis focuses on "whether the 'nature' of a state law action 'is qualitatively different from a copyright infringement claim.'" *Id.* at 53 (quoting *Computer Assocs. Intern., Inc. v. Altai, Inc.*, 982 F.2d 693, 716 (2d Cir. 1992)). "Courts in the Second Circuit 'take a restrictive view of what extra elements transform an otherwise equivalent claim into one that is qualitatively different from a copyright infringement claim.'" *Roberts v. BroadwayHD LLC*, — F. Supp. 3d —, No. 19 Civ. 9200, 2021 WL 467292, at *9 (S.D.N.Y. Feb. 9, 2021) (quoting *Briarpatch Ltd. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004)). The addition of a commercial purpose element (as California Civil Code § 3344 imposes) "does not sufficiently change the nature of a similar state law claim so that it is qualitatively different from a copyright infringement claim." *Jackson*, 972 F.3d at 53–54 (quoting *Altai*, 982 F.2d at 716 (2d Cir. 1992)) (internal brackets and quotation marks omitted); *see also Laws*, 448 F.3d at 1144–45.

Melendez simply states that his claims do not assert rights equivalent to those protected by the Copyright Act, because his rights of publicity, "whether asserted through California common or statutory law, are independent of any copyright." Pl.'s Opp'n 13. While it is true that Melendez's rights of publicity are independent of copyright (because his Attributes are not copyrightable), Melendez's claims are not qualitatively different from copyright infringement claims. Instead, they are effectively claims for the wrongful rebroadcasting of copyrightable sound recordings,[7] and are "in no meaningful fashion distinguishable from infringement of a copyright." *Jackson*, 972 F.3d at 54 (quoting *Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d

---

[7] To the extent that the advertisements incorporate the HSS Archives, they constitute derivative works, and Melendez's claim for their misuse is equivalent to a claim for copyright infringement. *See Lions Gate Ent. Inc. v. TD Ameritrade Servs. Co.*, 170 F. Supp. 3d 1249, 1267 (S.D.N.Y. 2016).

841, 851 (2d Cir. 1997)).  Melendez's request that the Court permanently enjoin Sirius from "continuing the improper acts identified herein" makes clear that Melendez seeks to control the broadcasting of sound recordings, a right reserved exclusively to the copyright holder, under the guise of protecting his right of publicity.  *See* Am. Compl. 15; 17 U.S.C. § 106(2) and (6).

Accordingly, because his claims focus on Sirius' "use of a work that falls within the 'subject matter of copyright' and . . . assert[] rights that are sufficiently equivalent to the rights protected by federal copyright law," Melendez's California rights of publicity claims are preempted by § 301. *Jackson*, 972 F.3d at 54.

## CONCLUSION

For the reasons stated, the Court GRANTS Sirius' motion to dismiss Plaintiff's Amended Complaint, with prejudice.  Melendez's claims, which would, if successful, affect a work within the subject matter of copyright, seek to enforce rights that are qualitatively equivalent to those reserved to copyright holders.  Because Plaintiff's claims are "clearly preempted by federal law," the Court "need not grant leave to amend." *Cortese v. Skanska Koch, Inc.*, No. 20-cv-1632, 2021 WL 429971, at *18 (S.D.N.Y. Feb. 8, 2021).  Repleading would be futile, because Plaintiff's claims have a substantive problem rather than an issue of inartful pleading.  *See Jordan v. Chase Manhattan Bank*, 91 F. Supp. 3d 491, 510 (S.D.N.Y. 2015) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).  Accordingly, the dismissal is with prejudice.

The Clerk of Court is directed to close the motion at ECF number 25 and close this case.

Dated: New York, New York
     June 24, 2021

SO ORDERED

*Paul A Crotty*

HONORABLE PAUL A. CROTTY
United States District Judge

12